**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**


| | |
|---|---|
| **KATHLEEN M. FRIEDEN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **V.** ) | **Case No. 2:14CV41NCC** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kathleen M. Frieden (Plaintiff) for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 12-1). Defendant has filed a brief in support of the Answer. (Doc. 19). Plaintiff has filed a Reply. (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 14).

## I.
## PROCEDURAL HISTORY

On March 14, 2011, Plaintiff filed her application for SSI, alleging a disability onset date of March 1, 2009. (Tr. 132). Plaintiff's application was

denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 65, 74-77). At the hearing, Plaintiff amended her onset date to March 1, 2011. (Tr. 32). By decision, dated March 11, 2013, the ALJ found Plaintiff not disabled. (Tr. 11-23). On February 7, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work." <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001) (citing <u>Nguyen v. Chater</u>, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. <u>See</u> <u>id.</u>

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). <u>See</u> <u>Steed v. Astrue</u>, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); <u>Eichelberger</u>, 390 F.3d at 590-91; <u>Masterson v. Barnhart</u>, 363 F.3d 731, 737 (8th Cir. 2004); <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential

analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland v.

Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an

ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See

Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations

supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was fifty-one years old at the time of the hearing, testified that she was unable to work because her back was "killing her"; she could not lift a lot of weight; she had "no balance"; and she forgot things. Plaintiff further testified that her pain radiated down her back; when she ate, her pancreas became upset; both of her shoulders hurt her; she had trouble sitting for long periods of time; when she sat for long periods, she had to get up and move around; she could not stand very long; and she had difficulty handling things because her hands went numb. (Tr. 41-42, 44). Plaintiff also testified that she had been seeing a

psychiatrist since 2010, and that her mental health symptoms included panic attacks and trouble concentrating, remembering and enjoying things. (Tr. 44-45).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged amended onset date, March 1, 2011; she had the severe impairments of fibromyalgia, history of pancreatitis, right foot degenerative changes status-post fracture, chronic obstructive pulmonary disease (COPD), post-traumatic stress disorder (PTSD), panic disorder with agoraphobia, depression, and alcoholism/alcohol abuse; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ concluded that Plaintiff had the RFC to perform light work[1] except that she could occasionally climb ladders, ropes, and scaffolds, could frequently stoop, kneel, crouch, and crawl, had to avoid concentrated exposure to excessive vibration, and had to avoid concentrated exposure to irritants such as dusts, odors, gases, fumes, and poorly-vented areas. Plaintiff was also limited to simple, routine, repetitive tasks, with no production rate or pace work, no interaction with the public, and only superficial interaction with co-workers. Additionally, the ALJ found Plaintiff

---

[1] The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Regulation (SSR) 83-10, 1983 WL 31251, at *6 (Dec. 12, 1983).

had no past relevant work; that she had limited education; that, based on her age, work experience, and RFC, there were jobs that existed in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ misinterpreted the opinion of Priscilla Long, M.D., Plaintiff's primary care treating physician at the Hannibal Clinic, and because the ALJ erred in giving little weight to the opinion of David Goldman, D.O., Plaintiff's treating psychiatrist. (Docs. 12-1, 20). For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence.

## A.  Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's alleged impairments. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot

substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that, "[a]fter a bout of pancreatitis in May 2010, [Plaintiff] suffered continued pain for a few months. However, she received no significant treatment for this impairment after September 2010" through November 2011. (Tr. 18). The ALJ further considered that after Plaintiff saw Dr. Long, in November 2011, she saw her "only every 3 months." (Tr. 18). Also, as considered by the ALJ, Plaintiff never received any counseling for her psychiatric conditions, and her psychiatrist never recommended such treatment. Only Plaintiff's lawyer recommended that she see a therapist. (Tr. 20-21, 201-21, 414). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care").

Second, after Plaintiff saw Dr. Long, in November 2011, at which time she was diagnosed with fibromyalgia, "as evidenced by widespread aching and multiple trigger points," Plaintiff never saw a rheumatologist or pain management specialist. Cf. Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist).

Third, the ALJ considered Plaintiff's daily activities, including that she testified that she cooked, shopped, did laundry, swept, mopped, and stood in line at a food retailer for two hours at a time. The ALJ also considered, and the record reflects, that Plaintiff helped her boyfriend bathe and cared for him due to his physical problems; Plaintiff tried to hang a hummingbird feeder with a broken foot and "constantly walked on her broken foot even when it was in a cast"; and, before her broken foot healed, Plaintiff jumped out of the back of a pick-up truck. (Tr. 18, 480, 485, 487). Also, Plaintiff told Dr. Long, in January 2012, that she played with her dogs on a regular basis and took care of the house. (Tr. 450). The ALJ additionally considered that, despite Plaintiff's alleged concentration deficits and panic when out in public, she was able to attend Alcoholics Anonymous (AA) meetings and church, manage her finances, and shop when another person was present. (Tr. 21).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger, 390 F.3d at 590 (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001).

Fourth, the court notes that when a gastroenterology provider recommended, in November 2011, that Plaintiff have an ultrasound, Plaintiff elected to defer the study. (Tr. 449). Also, Plaintiff continued to smoke, despite recommendations from doctors, including Dr. Long, that she stop doing so, and, as considered by the ALJ, in September 2010, Plaintiff admitted to her psychiatrist that she missed a few appointments. (Tr. 19, 274, 442, 454, 483, 497). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

See also Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010) (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Fifth, the ALJ considered that Plaintiff received "significant benefit" from medications and that her "trigger points showed improvement less than a year after she was diagnosed with fibromyalgia." (Tr. 18, 483). Indeed, on September 22, 2010, after two months of sobriety, Plaintiff reported to her psychiatrist that she was "not depressed at all" and that medication helped her anxiety. (Tr. 274). On October 25, 2010, Plaintiff reported to her psychiatrist that her "medications were working." (Tr. 273). Although Plaintiff reported, on January 21, 2011, that her anxiety was higher, after she increased her medication dosage on her own, she reported positive results. (Tr. 271-72). On February 18, 2011, Dr. Goldman reported that Plaintiff had no side effects from medication and had a "good response" to medication. (Tr. 271). Records reflect, that, on May 23, 2012, Plaintiff still had trigger points along the chest but that the "ones along the elbows, neck, back, and knees [] were doing much better." Also, on this date, Plaintiff told Dr. Long that medications prescribed by Dr. Long had helped with "both of her pain problems"; that, after Dr. Long put her on beta-blockers for her headaches, they "went away completely"; and that, after Dr. Long put her on "gabapentin 300 mg p.o. tid for her fibromyalgia," Plaintiff's muscle pain had improved "quite a

bit." (Tr. 383). Further, on June 4, 2012, Plaintiff reported that her psychiatric medications were working. (Tr. 461).

Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Sixth, as considered by the ALJ, when Plaintiff presented to the emergency room, in March 2011, she exhibited suicidal gestures and was "heavily intoxicated. In fact, Plaintiff's blood alcohol was .219. (Tr. 21, 400). Cf. 42 U.S.C. § 1382c(a)(3)(J) ("An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). As further considered by the ALJ, since this March 2011 episode, the record does not reflect that Plaintiff attempted to harm herself or that she expressed suicidal ideation. (Tr. 21).

Seventh, as stated above, Plaintiff cared for her disabled boyfriend. (Tr. 18, 173, 485). See Brown v. Barnhart, 390 F.3d 535, 541 (8th Cir. 2004) ("The ALJ considered testimony by Brown that seemed inconsistent with limitations caused

by the kind of pain Brown said she had, including that . . . she acted as the primary caregiver of her daughter with cerebral palsy, helping her bathe and tending to her needs whenever the part-time assistant was not present.").

## B.    Opinion of Dr. Long:

Dr. Long, Plaintiff's treating doctor, stated, in a Medical Source Statement, dated January 23, 2013, that Plaintiff's diagnosis included chronic pancreatitis, agoraphobia, panic disorder, fibromyalgia, migraine headaches, and balance disorder; that Plaintiff could sit 2 hours, stand 2 hours, and walk 3 hours in an 8-hour workday; Plaintiff could frequently lift or carry 5 pounds, occasionally lift 10 pounds, and never lift 20 or 50 pounds; Plaintiff could use both hands for fine manipulation; she could never use her hands for repetitive pushing and pulling; she could use her feet for repetitive movements; she could occasionally bend and kneel, never squat, stoop, or crouch, and frequently reach above; she could occasionally be around machinery, never be exposed to changes in temperature or noise, and frequently be exposed to dust and fumes; Plaintiff was limited in balancing; Plaintiff's medically determinable impairments of fibromyalgia and chronic pancreatitis could be expected to produce pain; Plaintiff's pain was moderate and daily; Plaintiff's subjective indications of pain were sleeplessness, irritability, and poor interpersonal relationships; trigger points on examination were also an objective indication of pain; medications and rest relieved Plaintiff's

pain; Plaintiff's pain interfered with her concentration, persistence or pace, and required her to lie down or to take a nap during a normal 8-hour workday; Plaintiff's impairments would cause her to need to take more than three breaks during a normal 8-hour workday and would cause her to be absent from work "all days per month"; and Plaintiff's limitations, as assessed on the form, existed at the assessed level of severity for ten years. The Medical Source Statement is not clear in regard to Dr. Long's response as to Plaintiff's ability to use her hands for simple grasping; Dr. Long checked boxes indicating Plaintiff could use her hands for simple grasping but inserted an illegible comment in regard to Plaintiff's ability to engage in "simple" grasping. (Tr. 500-503).

The ALJ stated that he gave little weight to Dr. Long's opinion, as reported in the Medical Source Statement, because the limitations suggested by Dr. Long were not supported by Plaintiff's "mild clinical findings on examination" and "her lack of any deficits in strength or range of motion." The ALJ also gave little weight to Dr. Long's opinion based on the improvement of Plaintiff's pain with medication and based on her daily activities. (Tr. 18-19). Plaintiff argues that the ALJ erred upon determining not to give controlling weight to Dr. Long's opinion. For the following reasons, the court finds that the ALJ's determination that little weight should be given to Dr. Long's opinion is supported by substantial evidence.

First, Dr. Long's opinion, as expressed in the Medical Source Statement, is inconsistent with her treatment notes. Plaintiff began treatment with Dr. Long, on November 11, 2011, at the Hannibal Clinic. Dr. Long reported on this date that Plaintiff was in *no apparent distress*; her lungs were clear to auscultation; Plaintiff's *abdomen was soft and non-tender*; she had *no edema*, clubbing or cyanosis in her lower extremities; a musculoskeletal exam showed *"slight" tenderness of some hand joints* but no synovitis; and Plaintiff had multiple trigger points along the neck, back, anterior chest, elbows, buttocks, and upper thighs. Dr. Long's diagnosis was fibromyalgia. (Tr. 435-36) (emphasis added). When Plaintiff next saw Dr. Long, in January 2012, complaining of headaches, she said that her headaches did not feel like migraines. Also, Dr. Long reported that Plaintiff continued to have "multiple trigger points," and that she recommended Plaintiff exercise regularly and continue taking Savella for her fibromyalgia. (Tr. 450). When Plaintiff saw Dr. Long, on April 2, 2012, although Plaintiff had multiple trigger points, Dr. Long reported that Plaintiff's "motor [was] 5/5"; she was alert and oriented; and her speech was normal. Dr. Long also reported that Plaintiff said her headaches had not improved; that the headaches did not feel like migraines; that she had no nausea or vomiting from the headaches; and that she could "continue functioning." (Tr. 454-55).

On May 23, 2012, Dr. Long reported the following:  Since Plaintiff had last been seen by Dr. Long, she had been drinking, stepped in a pothole, and broke her right foot; Plaintiff had been seeing Michelle Friedersdorf, D.P.M.; when Plaintiff called Dr. Long for a refill of her Vicodin, Dr. Long refused to do so after reviewing Dr. Friedersdorf's notes; Plaintiff said she was no longer drinking; as stated above, Plaintiff's *headaches and fibromyalgia related pain had improved with medication* and her *trigger points were better*; and Plaintiff was alert, in "*no apparent distress*," and "very pleasant."  (Tr. 383-84) (emphasis added).

On November 26, 2012, Dr. Long reported, pursuant to physical examination, that Plaintiff was in *no distress*, and had *"mild" epigastaric tenderness* and *no edema* in her lower extremities.  Dr. Long *doubted that Plaintiff had pancreatitis* and recommended that Plaintiff have an ultrasound.  (Tr. 495-96) (emphasis added).  Plaintiff was next seen by Dr. Long, on December 17, 2012, at which time Dr. Long reported that an ultrasound revealed a possible cystic lesion in the pancreas; that Plaintiff said she was "*feeling somewhat better*"; that physical examination showed Plaintiff's *abdomen was soft and nontender*; and that an endoscopic ultrasound was recommended by Dr. Long.  (Tr. 497-98) (emphasis added).

Based on Dr. Long's clinical records, the court finds the ALJ's determination that Dr. Long's records were not consistent with the degree of

limitations she placed on Plaintiff is based on substantial evidence. See Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) (affirming where ALJ declined to give treating doctor's opinion controlling weight where it was inconsistent with doctor's treatment notes). While the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data).

Second, to the extent the ALJ found Dr. Long's assessment inconsistent with the record as a whole, a treating physician's opinion does not obviate the need of the ALJ to evaluate the record as a whole. Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). See also Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009); Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical

evidence as a whole, the ALJ can accord it less weight."); <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

Third, as discussed above in regard to Plaintiff's credibility, Dr. Long's opinion was inconsistent with Plaintiff's self-reporting of the wide range of daily activities in which she engaged, <u>see</u> <u>Eichelberger</u>, 390 F.3d at 590; it was inconsistent with both Plaintiff's doctors' and her reporting that her symptoms improved with medication, <u>see</u> <u>Renstrom</u>, 680 F.3d at 1066; it was inconsistent with Dr. Long's failing to recommend that Plaintiff see a specialist for her fibromyalgia; and it was inconsistent with Plaintiff's seeing Dr. Long infrequently, <u>see</u> <u>Dukes</u>, 436 F.3d at 928.

Fourth, to the extent Plaintiff contends the ALJ did not properly consider the factors specified in 20 C.F.R. § 416.927 when considering Dr. Long's opinion, the record, as discussed above, reflects that the ALJ considered factors enumerated in that Regulation. Notably, 20 C.F.R. § 416.927 provides that the factors to be considered when determining the weight to be given a medical opinion include the examining relationship, the treatment relationship including the length and frequency of examination, supportability, consistency, specialization, and any other relevant factors. <u>See</u> 20 C.F.R. § 416.927(c)(1)-(6). Specifically, the ALJ considered that Dr. Long was Plaintiff's treating physician and not a specialist, but, after considering relevant factors, the ALJ determined that Dr. Long's opinion

regarding Plaintiff's ability to perform work-related activities should be given little weight. To the extent the ALJ may not have addressed every factor enumerated in the Regulations, it does not mean that the ALJ did not consider those factors. <u>See Moore ex rel. Moore v. Barnhart</u>, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995).

Fifth, to the extent Plaintiff argues that the ALJ misquoted Dr. Long's responses to questions asked on the Medical Source Statement in regard to Plaintiff's need to take breaks during a workday and in regard to her ability to push and pull (Tr. 18-19, Docs. 12-1 at 15, 20 at 1-2), the ALJ's doing so does not undermine the ALJ's well-supported determination that controlling weight should not be given to Dr. Long's opinion. <u>See Hepp v. Astrue</u>, 511 F.3d 798, 806 (8th Cir. 2008); <u>Senne v. Apfel</u>, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."). Additionally, there is no indication that the ALJ would have reached a different conclusion had he correctly recited Dr. Long's findings. <u>See Van Vickle v. Astrue</u>, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work' and any error by the ALJ was

therefore harmless."); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996)

("Although specific delineations of credibility findings are preferable, an ALJ's

arguable deficiency in opinion-writing technique does not require us to set aside a

finding that is supported by substantial evidence.") (citing <u>Carlson v. Chater</u>, 74

F.3d 869 (8th Cir. 1996)).

Sixth, the ALJ did give some weight to Dr. Long's opinion and incorporated

those limitations imposed by Dr. Long which the ALJ found credible in Plaintiff's

RFC. In particular, consistent with Dr. Long's opinion, the ALJ limited Plaintiff's

exposure to irritants. <u>See</u> <u>Choate v. Barnhart</u>, 457 F.3d 865, 869-70 (8th Cir. 2006)

(holding that the limitations imposed by the ALJ as reflected in the claimant's RFC

demonstrated that the ALJ gave some credit to the opinions of the treating

physicians); <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the

claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six

hours and stand for a total of two hours, but was limited to sedentary work. This in

itself is a significant limitation, which reveals that the ALJ did give some credit to

[the treating doctor's] medical opinions.").

Seventh, to the extent Dr. Long opined that Plaintiff was disabled, such an

opinion is not binding on the ALJ. <u>See</u> <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1065

(8th Cir. 2012) (holding that an ALJ need not defer to treating doctor's opinion that

claimant is totally disabled "because it invades the province of the Commissioner

to make the ultimate disability determination"); <u>Ward v. Heckler</u>, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). <u>See also</u> <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence).

Finally, the ALJ gave "good reasons" for determining that controlling weight should not be given to Dr. Long's opinion. <u>See</u> Social Security Regulation (SSR) 96-2p, at *2, 5, 1996 WL 374188 (July 2, 1996) (clarifying that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)"). As such, the court finds that the ALJ's determination that little weight should be given to Dr. Long's opinion is based on substantial evidence and that Plaintiff's arguments to the contrary are without merit.

**D.     Dr. Goldman's Opinion:**

Dr. Goldman, Plaintiff's treating psychiatrist, stated in a Mental Medical Source Statement, dated July 20, 2011, that Plaintiff's diagnosis included PTSD and panic disorder with agoraphobia; that, in regard to activities of daily living, Plaintiff had no limitations in her ability to meet her personal needs and her ability to maintain personal appearance, a mild limitation in her ability to maintain reliability, a moderate limitation in her ability to function independently, and marked limitations in her ability to cope with stress and behave in an emotionally stable manner; that, in regard to social functioning, Plaintiff had a mild to moderate limitation in her ability to maintain socially-acceptable behavior, moderate limitations in her ability to relate in social situations and accept instructions and to respond to criticism, and a marked limitation in her ability to interact with the general public; that in regard to concentration, persistence, and pace, Plaintiff had mild limitations in the ability to understand and remember simple instructions and work in coordination with others, moderate to marked limitations in the ability to sustain an ordinary routine without special supervision and to perform at a consistent pace, and marked limitations in the ability to maintain attention and concentration for extended periods, to maintain regular attendance and be punctual, to make simple work-related decisions, and to respond to changes in work setting; and that Plaintiff's medically determinable impairments would cause unpredictable

interruptions during a normal workday or week.  Dr. Goldman further stated that he could not predict the frequency of Plaintiff's panic attacks; that Plaintiff was unable to work; that Plaintiff's absences from work due to her panic episodes could be daily; that Plaintiff's limitations had lasted twelve continuous months or could be expected to last that long; that the onset of Plaintiff's impairments was in childhood; that Plaintiff had been receiving treatment since April 2010; that Plaintiff had a Global Assessment of Functioning (GAF) of 55[2]; and that Plaintiff was unable to engage in any employment.  (Tr. 300-303).

---

[2]  Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.  See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994).  Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.  See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original).  See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

The ALJ stated that he gave little weight to Dr. Goldman's opinion as expressed in the July 2011 Mental Medical Source Statement. (Tr. 21). Plaintiff contends that the ALJ erred in doing so and that the ALJ's decision to do so is not based on substantial evidence. (Doc. 12-1 at 17). For the following reasons, the court finds that the weight given to Dr. Goldman's opinion by the ALJ is based on substantial evidence.

First, the ALJ considered that Dr. Goldman's "rather extreme limitations [were] at odds with his notes" reflecting Plaintiff had no significant complaints other than continued anxiety. (Tr. 21). Significantly, Plaintiff told Dr. Goldman, in September 2010, that she had been sober for two months and she was not at all depressed. (Tr. 274). In October 2010, Plaintiff told Dr. Goldman that she was trying to find a job. (Tr. 273). Cf. Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)).

In July 2012, Plaintiff told Dr. Goldman that she was doing well; in October 2012, she told him that she was "doing okay"; and, in December 2012, Plaintiff told Dr. Goldman that her "meds [were] doing good for [her]." (Tr. 458-60). See Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) (affirming where ALJ declined

to give treating doctor's opinion controlling weight where it was inconsistent with doctor's treatment notes); see also Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation).

Second, the ALJ considered that Dr. Goldman's conclusions were inconsistent with his lack of significant clinical findings. (Tr. 21). Indeed, when Plaintiff presented, in September and October 2010, February, September, and December 2011, and February, April, June, July, October, and December 2012, Dr. Goldman reported that Plaintiff's appearance, behavior, activity level, orientation, speech, affect, and thought process were normal. (Tr. 271, 273-74, 305, 412, 414, 458-61). In July 2011, Dr. Goldman made these same findings with exceptions regarding Plaintiff's affect[3] and noted Plaintiff's speech was quiet. (Tr. 306). "A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009).

---

[3] Dr. Goldman's notation regarding Plaintiff's affect is not legible.

Third, as discussed above, the ALJ considered that Dr. Goldman's conclusions were inconsistent with his reporting that Plaintiff's symptoms improved with medication. (Tr. 271, 273-74, 461). See Renstrom, 680 F.3d at 1066; Davidson, 578 F.3d at 846; Medhaug, 578 F.3d at 813.

Fourth, the ALJ considered that Dr. Goldman's opinion was inconsistent with Plaintiff's testimony that she suffered only a couple of panic attacks a month. (Tr. 21). An ALJ need not accord a treating physician's opinion controlling weight where it is inconsistent with a claimant's own testimony. See Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013).

Fifth, the ALJ considered that Dr. Goldman's opinion was inconsistent with Plaintiff's daily activities, including her ability to care for her household and her boyfriend, attend AA meetings and church, manage her finances, and shop for groceries. (Tr. 21). See Eichelberger, 390 F.3d at 590.

Sixth, although Dr. Goldman reported that Plaintiff had a GAF of 55, such a score reflects only a moderate limitation in an individual's overall level of functioning, not including impairments due to physical or environmental limitations. See n.2 below. Cf. Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work). Moreover, an ALJ may afford greater weight to medical

evidence and testimony that to GAF scores. See Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010); Grim v. Colvin, 2014 WL 859840, at *7-8 (E.D. Mo. Mar. 5, 2014) (unpublished) (ALJ properly found claimant's mental impairments were not serious despite the presence of GAF scores that reflected moderate or serious symptoms).

Seventh, Plaintiff's limitations, as reported by Dr. Goldman, were inconsistent with the findings of Alicia Gonzalez, M.D., also a psychiatrist, who reported, on April 22, 2010, pursuant to an evaluation of Plaintiff, that Plaintiff was well groomed, cooperative, friendly, smiling, and had coherent speech; that Plaintiff denied auditory or visual hallucinations; that her memory was not impaired regarding recent and remote events; that she was well oriented; that she was sleeping well; that her insight and judgment were fair; that Plaintiff complained of "bad anxiety" which had been going on for several years; and that Plaintiff was *working full-time* as an aide. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks omitted).

Eighth, to the extent Dr. Goldman opined that Plaintiff was disabled for purposes of SSI, such a decision is for the ALJ to make. See Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (ALJ need not defer to treating doctor's

opinion that claimant is totally disabled "because it invades the province of the Commissioner to make the ultimate disability determination").

Finally, upon determining that controlling weight should not have been given to Dr. Goldman's opinion, the ALJ was exercising his obligation to review the record as a whole. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as whole). Indeed, the ALJ was not obligated to rely on one opinion but rather it was the ALJ's role to review the record in its entirety upon determining Plaintiff's limitations. Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole."). As such, the court finds that the ALJ's decision not to give controlling weight to Dr. Goldman's opinion is based on substantial evidence and consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint, Brief in Support of Complaint, and Reply is **DENIED** (Docs. 1, 12-1, 20).

Dated this 11th day of September 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE